IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ERIC J. GREEN,<br><br>Plaintiff,<br><br>vs.<br><br>Nancy A. Berryhill, Acting Commissioner of Social Security,<br><br>Defendant. | CV 16-79-M-JCL<br><br><br>ORDER |

Plaintiff Eric Green brings this action under 42 U.S.C. § 405(g) seeking

judicial review of the decision of the Commissioner of Social Security denying his

application for disability insurance benefits and supplemental security income

benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433,

§§ 1382-1385. Green alleges disability since May 5, 2011, due to depression,

bipolar disorder, drug abuse (meth), back problems, and a head injury. Green's

application was denied initially and on reconsideration, and he requested an

administrative hearing. Green appeared with a non-attorney representative at the

administrative hearing in October 2012. In February 2013, an ALJ issued a

decision finding Green not disabled within the meaning of the Act. The Appeals

Council denied Green's request for review, and Green sought judicial review. In April 2015, this Court remanded Green's case for further proceedings. Green appeared with counsel at the hearing on remand in October 2015, and in December 2015 the same ALJ issued a decision finding Green not disabled within the meaning of the Act. The Appeals Council denied Green's request for review, making the ALJ's decision the agency's final decision for purposes of judicial review.[1] (Tr. 4-8). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Green was 40 years old at the time of his alleged onset date, and 47 at the time of the ALJ's decision on remand.

I.     **Standard of Review**

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate

---

[1] Green argues the Court should remand his case for an award of benefits because the Commissioner's brief adopts the summary of facts set out in the ALJ's decision, and does not contain a statement of the case as required by Local Rule 78.2(c)(2). The Court finds the Commissioner's brief is adequate, and declines to remand for an award of benefits on this basis.

to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d

1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings

"if supported by inferences reasonably drawn from the record." *Batson v.*

*Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir.

2004). "[I]f evidence exists to support more than one rational interpretation," the

Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193

(*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court

"may not substitute its judgment for that of the Commissioner." *Widmark*, 454

F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.    <u>Burden of Proof</u>

To establish disability, a claimant bears "the burden of proving an 'inability

to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which...has lasted or can be expected

to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at

1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a

five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii).

If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

The ALJ found at step one that Green meets the insured status requirements of the Act through March 31, 2017, and had not engaged in substantial gainful activity since his alleged onset date. (AR 512). At step two, the ALJ found that Green had the following severe impairments: back disorder, organic mental disorder, borderline personality disorder, attention deficit hyperactivity disorder (ADHD) and affective disorder. (AR 511). The ALJ concluded at step three that Green did not have an impairment or combination of impairments that meets or medically equals any impairment described in the Listing of Impairments. (AR 513). The ALJ also found that Green's subjective testimony was only partially credible, and concluded he had the residual functional capacity to perform a reduced range of light work. (AR 515). The ALJ found at step four that Green could not perform any past relevant work, but concluded at step five that he was not disabled because he was capable of semi-skilled light work as a bench assembler or assembly worker, and unskilled light work as an assembler of plastic hospital products. (AR 522-23).

### A. Severe Impairments

Green argues the ALJ erred by not including major depressive disorder, bipolar disorder, and degenerative disc disease as severe impairments at step two.

He points out that the ALJ considered those impairments severe in his first decision, and maintains he should have included them in the most recent decision as well.

Although the ALJ did not use exactly the same terms, he identified essentially the same severe impairments. The ALJ identified Green's degenerative disc disease as a back disorder, his major depressive disorder as an affective disorder, and referred to what he previously called a bipolar disorder as an organic mental disorder and borderline personality disorder. The ALJ adequately accounted for Green's mental and physical impairments at step two.

### B. Medical Opinions

Green argues the ALJ failed to comply with the Court's remand order because he did not adopt the opinion of examining psychologist Dr. James Wahlberg in its entirety, and erred by instead crediting the testimony of the medical expert, psychologist Dr. Michael Enright.

In December 2011, examining psychologist Dr. James Wahlberg performed a psychological and learning disorder evaluation. (AR 372-82). He diagnosed Green with attention deficit hyperactivity disorder, a cognitive disorder, alcohol and methamphetamine abuse in remission, major depression, and a borderline personality disorder characterized by excessive anger, interpersonal difficulties,

and poor judgmental processes. (AR 380). Dr. Wahlberg found that Green had a full scale IQ of 89, placing him within the low average classification of intelligence. (AR 375). He explained that Green had "attention issues," was easily frustrated, excessively impatient, and had difficulty with working memory. (AR 378). Dr. Wahlberg recommended that Green "focus on occupational areas that primarily involve the use of his hands, as opposed to thoughts and ideas," and participate in a vocational evaluation to help him make "an informed choice on possible occupations that would be available to him." (AR 381).

In his February 2013 decision, the ALJ gave great weight to Dr. Wahlberg's opinion but did not include any restrictions regarding memory, concentration, persistence, or pace in the residual functional capacity assessment, and did not limit Green to work primarily involving the use of his hands as opposed to thoughts and ideas. Because the ALJ did not provide any reasons for rejecting Dr. Wahlberg's opinion, this Court found the ALJ erred by not incorporating those functional limitations into the residual functional capacity assessment and remanded the matter for further administrative proceedings.

Green apparently reads the Court's order as directing the ALJ to adopt Dr. Wahlberg's opinion in its entirety on remand. Contrary to Green's argument, however, the ALJ adequately complied with the Court's remand order by

reevaluating Dr. Wahlberg's opinion, taking new evidence, formulating a new residual functional capacity, and obtaining additional testimony from the medical and vocational experts.

To the extent Green argues the ALJ again failed to provide sufficiently specific and legitimate reasons for discounting Dr. Wahlberg's opinion, the Court disagrees.[2]   In his December 2015 decision on remand, the ALJ expressly gave Dr. Wahlberg's opinion partial weight.  He agreed that Dr. Wahlberg's "psychological test interpretations" were credible.  For example, the ALJ noted that Dr. Wahlberg's psychological test results showed that Green functioned in the average to low average intellectual range, and that his strengths were in perceptual processes and the use of his hands.  (AR 518).   Dr. Wahlberg further indicated that Green had some difficulties with working memory, processing speed, and the pace of fine visual-motor speed and coordination which were all consistent with ADHD.  The ALJ identified ADHD as one of Green's severe impairments, but explained that he found Dr. Wahlberg's opinion provided "limited assistance in determining [Green's] residual functional capacity because, while it identifies

---

[2] Because Dr. Wahlberg's opinion was contradicted by that of the state agency physician and medical expert, the ALJ was only required to give specific, legitimate reasons supported by substantial evidence.  See *Bray v. Commissioner*, 554 F.3d 1219, 1228 n. 8 (9th Cir. 2009).

some jobs in which [Green] is likely to succeed, it does not clearly define many of

[Green's] specific abilities to function in a workplace on a daily basis." (AR 519).

Dr. Wahlberg recommended that Green "focus on occupational areas that

primarily involve the use of his hands, as opposed to thoughts and ideas," and

participate in a vocational evaluation to help him make "an informed choice on

possible occupations that would be available to him." (Tr. 381).

The ALJ limited Green to light work not requiring him to deal with large

numbers of people at any one time and requiring only occasional new learning.

(AR 515). He also limited Green to occupations with a specific vocational

preparation (SVP) of 4 or lower,[3] and at step five identified unskilled assembly

jobs he would be capable of performing. (AR 515, 523). The ALJ's decision is

substantively consistent with Dr. Wahlberg's opinion, and the ALJ reasonably

found that Dr. Wahler did not impose any additional specific limitations beyond

those accounted for in the residual functional capacity assessment.

## B.     Other Source Evidence

Green argues the ALJ erred by not giving more weight to the opinions of

---

[3] SVP levels measure the skill level necessary to perform a particular job. Unskilled work corresponds to an SVP level of 1-2, semi-skilled work corresponds to an SVE level of 3-4, and skilled work corresponds to an SVP level of 5-9. SSR 00-4p, 2000 WL 1898704, *3 (Dec. 4, 2000).

several other sources.

### 1. Carleen Grussling

Green first argues the ALJ should have given more weight to the opinion of

Carleen Grussling, a licensed clinical social worker who met with him in group

and individual therapy sessions between December 2011 and May 2014. (AR

404-43, 480-89, 801-48). On September 20, 2012, Grussling completed a medical

questionnaire form indicating that Green's mental impairments caused multiple

symptoms, including depressed mood decreased energy, and anger. She stated that

Green has "stressful days" and would miss three days of work each month. But

Grussling also indicated that Green could work on a regular and continuing basis

eight hours a day in "a supportive low stress environment with lots of direction

and room for teaching/error." (AR 446).

As a social worker, Grussling does not qualify as an acceptable medical

source. 20 C.F.R. §§ 404.1513(a),(d), 416.913(a),(d); SSR 06-3p. Other sources

are not qualified to provide medical opinions, but can provide evidence about the

severity of a claimant's impairments and how they affect the claimant's ability to

work. *See* 20 C.F.R. § 404.1513. While an ALJ must provide specific and

legitimate reasons based on substantial evidence to discount evidence from an

"acceptable medical source," evidence from an "other source" like Grussling is not entitled to the same deference and may be discounted if the ALJ provides germane reasons for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111-12 (9th Cir. 2012).

The ALJ discussed Grussling's records, noting that they detailed Green's ongoing family relationship problems but also demonstrated he was capable of functioning independently outside his home, attending daily Alcoholics Anonymous meetings and weekly therapy sessions, and was doing well on medications in 2013. (AR 516). The ALJ also considered the medical questionnaire, but found her responses ambiguous to the extent she indicated that Green would miss three days of work each month, but also wrote that he could work on a regular and continuing basis eight hours a day in a supportive low stress environment. The ALJ also found that Grussling's September 2012 opinion was provided not long after Green's alleged onset date and early in their treatment, and so was of less persuasive value. These were sufficiently germane reasons for not adopting Grussling's statement that Green would be absent three days a month, particularly where it is evident that the ALJ otherwise considered and gave substantial weight to Grussling's more recent treatment records.

2.    Irene Walters

Green argues that the ALJ did not provide germane reasons for rejecting

the opinion of nurse practitioner Irene Walters, as set forth on two Medical Source

Statement forms.  (AR 451-58, 1042-44).

Walters saw Green roughly a dozen times between August 2011 and

November 2012, and seven times between April 2014 and August 2015. (364-71,

392-43, 474-79, 1015-41).  The ALJ considered the records from these visits,

noting that Walters generally recorded that Green was depressed, anxious, and

irritable, and adjusted his medications accordingly.  (AR 517).  In October 2012,

Walters completed a Medical Source Statement form and wrote a letter indicating

that Green had marked and extreme limitations in several areas, and could become

overwhelmed and paralyzed under pressure.  (AR 451-58).  In August 2015,

Walters completed a second Medical Source Statement form again identifying

several marked and extreme limitations, and stating that Green has difficulty

responding in stressful situations.  (AR 1042-44).

As a nurse practitioner, Walters is an "other source" whose opinion the ALJ

could reject for germane reasons.  See 20 C.F.R. §§ 404.1513(d) & 416.913(d);

*Molina,* 674 F.3d at 1111.  The ALJ met that standard here.   First, the ALJ found

that foundation for Walters' opinions was weakened because she did not address the effect Green's daily marijuana use had on his diagnoses, medication interactions, and medical functioning, as the medical expert suggested a prescriber should. (AR 519). The ALJ recognized that Walters' failure to take Green's marijuana use into account was understandable, since he had apparently not disclosed it to her, but he reasonably found that Walters' opinions were entitled to less weight because of that deficiency.

The ALJ next discounted Walters' opinions regarding Green's ability to function because they were based almost exclusively on his subjective reports, some of which were inconsistent with his testimony at the hearing and the psychological test results in the record. (AR 530). As the ALJ noted, Walters' records reflect that she generally noted no or minimal problems in abstraction, affect, appearance, attitude, cognitive function, perception disturbance, eye contact, insight, judgment, memory, reliability, speech thought contact, and thought process. (AR 517). By the end of 2012, Walters' notes reflect that Green was improving on medication, and in 2012 she consistently described Green as doing well on medication, except for the fact that he experienced increased anxiety when he enrolled in college classes. (AR 366-371, 393-403, 474-79).

Relying on medical expert, psychologist Dr. Enright's testimony, the ALJ

further found that if Green's limitations were as severe as Walters suggested, he

would be restricted to no contact with anyone, which was excessive in light of the

fact that he had not been diagnosed with any phobias. (AR 520). Dr. Enright also

testified that if Green was impaired to the extent Walters suggested, he would

likely require residential care, rather than the outpatient care he receives. (AR

520). The ALJ reasonably relied on Dr. Enright's expert medical opinion over that

of Walters, who was not an acceptable medical source. These were sufficiently

germane reasons for discounting Walters' opinion.

3.    Kelsey Wilkerson

In October 2012, Green's case manager at the Western Montana Mental

Health Center, Kelsey Wilkerson, wrote a letter in support of his application for

disability benefits. (AR 447-48). Wilkerson had been working with Green since

February 2012, during which time he was enrolled in the Bitterroot College

Program. She explained that Green was overwhelmed and falling behind on his

course work. Wilkerson said that Green had problems with concentration,

memory, communication, and anger management, and felt that he would not be

"able to sustain employment now or in the foreseeable future." (AR 44748).

The ALJ considered Wilkerson's statement, and found her observations regarding Green's difficulty recalling information credible, but otherwise gave little weight to her opinion regarding Green's functional level because it was limited to a relatively brief period following the disability onset date. As discussed above, medical records provided by Walters reflect that by the end of 2012 Green was improved and doing well on medication. (AR 366-371, 393-403, 474-79). Records from 2014 and 2015 similarly reflect that Green was stable on medication, and had started a part time job delivering pizzas. (AR 1015-35). To the extent the ALJ discounted Wilkerson's letter, he permissibly did so because it was not consistent with more recent medical records.

4.    Jerry Zook

Green's vocational rehabilitation counselor, Jerry Zook, wrote in an October 2012 letter that he had "serious reservations" about Green's ability to find and maintain full time employment due to his lack of insight, inappropriate verbal communication, poor follow through, and dependence on others to help him with routine tasks and activities. (AR 449-50). As with Wilkerson's letter, the ALJ discounted Zook's letter in part because it was written in October 2012 and was

thus limited to a relatively brief period following the alleged onset date. The ALJ

also questioned the foundation for Zook's letter, noting that he had not considered

much of the medical evidence in the record and premised his opinion in large part

on Dr. Wahlberg's examination and Wilkerson's letter. (AR 520). These were

sufficiently germane reasons for giving Zook's letter little weight.

## C.    Credibility

Green argues the ALJ did not provide sufficiently clear and convincing

reasons for finding him only partially credible.[4] If the ALJ finds "the claimant has

presented objective medical evidence of an underlying impairment which could

reasonably be expected to produce the pain or other symptoms alleged," and "there

is no evidence of malingering, the ALJ can reject the claimant's testimony about

the severity of her symptoms only by offering specific, clear and convincing

reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

(internal quotation marks and citations omitted). Green met his initial burden

because he provided evidence that he has underlying impairments that could

reasonably be expected to produce some degree of pain and other symptoms, and

---

[4] The Commissioner maintains that Green waived this argument because his brief includes no substantive law or argument. While it is true that Green's challenge is a general one, the Court declines to find that he has waived the issue.

the ALJ did not find that he was malingering.

Green testified that his impairments caused him a number of physical and mental limitations. The ALJ found that Green's testimony regarding his back impairment and resulting physical limitations was generally consistent with the medical records, and credited that testimony in finding him capable of light work. (AR 516). To the extent Green testified that his mental symptoms and limitations were of debilitating severity, however, the ALJ found him not entirely credible in large based on the fact that he was not consistent in reporting his marijuana use to his health care providers. (AR 521). In particular, the ALJ noted that Green reported to Walters that his marijuana dependence was in remission, but that he testified to having used marijuana daily, under authorization of a medical marijuana card, since before the first administrative hearing. (AR 519).

The ALJ also cited evidence that Green's symptoms improved with medication and treatment as a basis for finding his testimony less than entirely credible. (AR 519). The ALJ discussed that evidence elsewhere in his decision, noting for example that in December 2013 Green was looking really good on his current medications and in January 2014 was hanging out with new and different people. (AR 517). *See, e.g., Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (ALJ permissibly discounted claimant's testimony

partly based on medical records showing that, contrary to claimant's allegations, the medical records showed that his symptoms improved with the use of medication). These were sufficiently clear and convincing reasons for finding Green's testimony as to the severity of his psychological symptoms only partially credible.

## IV.   Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is affirmed.

DATED this 6th day of March, 2017

_____
Jeremiah C. Lynch
United States Magistrate Judge